# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER M. HICKS, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 4:24-cv-00356-RK |
| v. | ) ) ) | |
| L.S. RICHARDSON REVOCABLE LIVING TRUST DATED 12/13/2011; LC RICHARDSON RVOC LIVING TR UTA 12 13 2011, LLC D/B/A LC'S BAR-B-Q, | ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER

Plaintiff Christopher M. Hicks brings this action against Defendants L.C. Richardson Revocable Living Trust Dated 12/13/2011 and LC Richardson RVOC Living TR UTA 12 13 2011, LLC d/b/a LC's Bar-B-Q alleging violations of the Americans with Disability Act ("ADA") in a place of public accommodation. Before the Court is Defendants' motion to dismiss Plaintiff's amended complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. After careful consideration and for the reasons stated below, the motion is **GRANTED**.

## Background[1]

Plaintiff has previously been diagnosed with "post-traumatic stress disorder, traumatic brain injury, ulcerative colitis, bad knees," heart issues, and diabetes. (Doc. 2 at ¶ 7.) As a result, Plaintiff has limited mobility and, depending on how far he is walking and how he feels, he requires the use of a cane to ambulate approximately fifty percent of the time. (*Id.*) Plaintiff also requires the use of a service dog that is trained to assist him. (*Id.*)

On or about October 16, 2023, Plaintiff visited Defendants' restaurant, LC's Bar-B-Q with his service dog. (*Id.* at ¶ 11.) Plaintiff alleges that the restaurant staff "were unaware of the laws pertaining to service animals, and they demanded that [Plaintiff] leave the restaurant because his

---

[1] In considering Defendants' motion to dismiss, the Court takes the facts pleaded in Plaintiff's amended complaint as true and construes them in the light most favorable to Plaintiff as the non-moving party. *Pharm. Rsch. & Mfr. of Am. v. Williams*, 64 F.4th 932, 945 n.7 (8th Cir. 2023).

service dog was not allowed there." (*Id.* at ¶ 12.) The interaction escalated and staff members "screamed at [Plaintiff] and demanded that he leave" immediately. (*Id.* at ¶ 13.) Plaintiff "was barely able to finish his food and he was ultimately forced to leave" the restaurant. (*Id.* at ¶ 14.)

In addition, prior to leaving LC's Bar-B-Q, Plaintiff "observed and experienced numerous other ADA violations in addition to barring the presence of his service dog which made his visit to the restaurant extremely unpleasant." (*Id.*) Plaintiff's amended complaint alleges the presence of numerous architectural conditions inside and outside of LC's Bar-B-Q which he contends fail to comply with the ADA and/or ADA Accessibility Guidelines ("ADAAG"),[2] including the absence of accessible seating, six issues with the plumbing elements and facilities, a service counter in excess of thirty-eight inches high, four issues with the ramp located inside of the restaurant, six issues with the parking area, and four issues with paths of travel and the threshold entrance of the restaurant. (*Id.* at ¶¶ 26-49.)

While Plaintiff resides in Arkansas, he frequently travels to Kansas City. (*Id.* at ¶¶ 8-10.) Plaintiff explains that he "would like to eat at Defendant's Restaurant again in the future once it is made accessible and the employees are properly trained regarding the use of service animals and the treatment of their disabled owners." (*Id.* at 10.)

Plaintiff's amended complaint seeks declaratory and injunctive relief under the ADA. Defendants move to dismiss the amended complaint for lack of subject-matter jurisdiction.

## Standard

A party may move to dismiss a claim for lack of subject-matter jurisdiction under Rule 12(b)(1). One component of a federal court's subject-matter jurisdiction is what is known as a plaintiff's Article III standing. *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016). The doctrine of Article III standing is "rooted in the traditional understanding of a case or controversy" and "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citations omitted). To cross the threshold into federal court, Article III standing requires Plaintiff to demonstrate the following three things: "(i) that he suffered an injury in fact that is concrete, particularized, and

---

[2] "The ADAAG is a comprehensive set of structural guidelines that articulates detailed design requirements to accommodate persons with disabilities." *Davis v. Anthony, Inc.*, 886 F.3d 674, 676 n.2 (8th Cir. 2018) (cleaned up). The ADAAG provisions relevant to places of public accommodation are found in appendices B and D to 36 C.F.R. part 1191.

actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Ojogwu v. Rodenburg Law Firm*, 26 F.4th 457, 461 (8th Cir. 2022) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 416, 417 (2021)). "To survive a motion to dismiss, a plaintiff need only 'allege sufficient factual matter, accepted as true, to support a reasonable and plausible inference that she satisfies the elements of Article III standing.'" *Johnson v. Griffin*, 69 F.4th 506, 510 (8th Cir. 2023) (quoting *Hawse v. Page*, 7 F.4th 685, 688-89 (8th Cir. 2021)).

## Discussion

Plaintiff pleads one count of disability discrimination under Title III of the ADA, which prohibits disability discrimination within places of public accommodation. 42 U.S.C. § 12182(a). Disability discrimination under the ADA includes, *inter alia*, (1) "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities," and (2) "a failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable." § 12182(b)(2)(A). Federal regulations implementing the ADA provide, in addition and specifically as regarding service animals that places of public accommodation "shall modify policies, practices, or procedures to permit the use of a service animal by an individual with a disability." 28 C.F.R. § 36.302(c)(1).

Defendants assert that the Court lacks subject-matter jurisdiction because Plaintiff does not claim to be disabled for purposes of the ADA, Plaintiff suffered no injury-in-fact, and the issues presented by Plaintiff's amended complaint are moot because the only barrier Plaintiff personally encountered has been remedied by Defendants. (Doc. 7.) Because the Court concludes that Plaintiff has failed to demonstrate that he suffered an injury-in-fact, the Court begins and ends its inquiry with that element.

Plaintiff claims that he was denied access to LC's Bar-B-Q in two ways: (1) he was denied full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations with his service dog due to conduct of restaurant staff; and (2) he "observed and experienced" or "observed and/or encountered" various architectural barriers present in and outside of the restaurant which are noncompliant with the ADA. (Doc. 2 at ¶¶ 14, 21, 56.) Defendants argue that Plaintiff has not suffered an injury-in-fact as to either theory.

3

As to the alleged denial of access based upon restaurant staff conduct, Defendants assert that contrary to Plaintiff's contention that restaurant staff demanded he leave LC's Bar-B-Q and stated that his service dog was not allowed inside, Plaintiff was served food and permitted to eat in the restaurant; therefore, he suffered no injury.  Plaintiff alleges that LC's Bar-B-Q staff "screamed at" him and demanded he leave the restaurant immediately because his service dog was not allowed.  (Doc. 2 at ¶¶ 12-14.)  Despite these allegations, Plaintiff acknowledges that he was permitted inside of the restaurant with his service dog and he was served food (which he ate), but he asserts without further explanation that "he was ultimately forced to leave."  (*Id.*)  In response to the motion to dismiss, Plaintiff argues only that he "had a legally protected right to eat at Defendants' restaurant with his service dog, and not to be yelled at or told to leave by the manager." (Doc. 8 at 3.)  Initially, the Court notes that Plaintiff's own allegations establish that he did eat at the restaurant with his service dog.  (*See* Doc. 2 at ¶ 14.)  Therefore, what remains is whether Plaintiff "had a legally protected right . . . not to be yelled at or told to leave by the manager" even though he was in fact served food inside of the restaurant with his service dog.  (Doc. 8 at 3.)

Plaintiff fails to provide any case law or support for his contention that the ADA provides such protection.  While the Court doubts that the ADA protects Plaintiff from being "yelled at" by the manager (absent additional factual allegations not presented here), assuming the truth of Plaintiff's allegation that he was told to leave and was ultimately forced to leave the restaurant based on the presence of his service dog—albeit after Plaintiff consumed his meal but before he was prepared to leave the restaurant—the Court presumes such conduct would establish Plaintiff suffered an injury under the ADA.  *See Krist v. Kolombos Rest. Inc.*, 688 F.3d 89, 94-98 (2d Cir. 2012) (recognizing viability of constructive denial of access claim but finding plaintiff failed to state a claim where she was not denied goods or services, "was neither ordered to leave . . . nor asked not to return," rude or insensitive comments or shouts by owner were sporadic in ten-month period where plaintiff continued to frequent restaurant, and staff behavior was not "outrageous or demeaning verbal harassment"); *Bentley v. JDM Enter.*, No. 6:18-CV-06477, 2020 WL 5250490, at *5 (W.D.N.Y. Sept. 3, 2020) ("Plaintiff concedes that he was never denied service, asked to leave the restaurant, prevented from parking in an accessible space, or asked to move his vehicle. . . . [W]hile it may have been rude and inappropriate for [staff member] to question Plaintiff on two occasions as to whether he had properly parked in a handicapped designated spot, it did not amount to a Title III violation."); *Stan v. Wal-Mart Stores, Inc.*, 111 F. Supp. 2d 119, 125 (N.D.N.Y.

4

2000) ("Although Plaintiff may have been humiliated or embarrassed by the way she was treated by Defendants, because they permitted her to shop at their stores without restriction, it is unlikely that this rises to the level of an injury under the ADA."). While the ADA does not "regulate individuals' conduct so as to ensure that they will never be rude or insensitive to persons with disabilities," Plaintiff alleges in his amended complaint that he was asked, and was ultimately forced, to leave, plausibly alleging "more than mere rudeness or insensitivity." *Camarillo v. Carrols Corp.*, 518 F.3d 153, 157 (2d Cir. 2008) (cleaned up). The Court's injury-in-fact inquiry does not end here, however.

Plaintiffs seeking declaratory and injunctive relief "must show they are experiencing an ongoing injury or an immediate threat of injury" in order to establish the injury-in-fact element of standing. Webb ex rel. K.S. v. Smith, 936 F.3d 808, 815 (8th Cir. 2019). An "intent to return to the place of injury 'some day' is insufficient" to establish an injury-in-fact under the ADA. *Meagley v. City of Little Rock*, 639 F.3d 384, 391 (8th Cir. 2011) (quoting *Steger v. Franco*, 228 F.3d 889, 893 (8th Cir. 2000)). Defendants argue that Plaintiff has failed to allege "concrete plans to patronize L.C.'s again." (Doc. 7 at 6.) Plaintiff does not contest Defendants' argument on this point. The Court agrees that Plaintiff's amended complaint fails to establish that he faces a threat of future harm.

Plaintiff lives in Arkansas, but he claims he "travels to or through Kansas City approximately 12 times per year." (Doc. 2 at ¶ 10.) Plaintiff states that he "often stops to eat on these trips, he enjoys bar-b-que," and he "would like to eat at Defendant's Restaurant again in the future once it is made accessible and the employees are properly trained regarding the use of service animals and the treatment of their disabled owners." (*Id.*) The Court finds these allegations amount to "an uncertain intention to some day return" to LC's Bar-B-Q, *Smith v. Golden China of Red Wing, Inc.*, 987 F.3d 1205, 1209-10 (8th Cir. 2021), and are therefore insufficient to establish that Plaintiff is "likely to visit the restaurant in the imminent future." *Meagley*, 369 F.3d at 391 (cleaned up); *see Smith v. Bradley Pizza, Inc.*, 821 Fed. Appx. 656, 658 (8th Cir. 2020) (plaintiff established, "at most, intentions to return . . . 'some day'" where he merely stated he had "a desire to go back" and admitted he had no specific plans to visit in the foreseeable future). *Cf. Disability Support Alliance v. Heartwood Enter.*, 885 F.3d 543, 546 (8th Cir. 2018) (intent to return established where plaintiff testified he had "an extremely strong interest" to revisit the building to visit a specific doctor who offered a therapy particularized to his distinct type of disability).

5

Accordingly, Plaintiff has failed to demonstrate that he suffered an injury-in-fact with respect to the portion of his claim alleging he was denied access to LC's Bar-B-Q with his service dog due to staff conduct.

As to Plaintiff's allegations pertaining to the architectural ADA violations at the restaurant, Defendants argue that Plaintiff does not claim that he personally encountered any of the alleged ADA violations, and he does not assert he suffered an injury if he did encounter them. The Court agrees, in part. In the amended complaint, Plaintiff alleges that he "observed and experienced numerous other ADA violations in addition to barring the presence of his service dog which made his visit to the Restaurant extremely unpleasant."[3] (Doc. 2 at ¶ 14.) Prior to setting forth the slew of physical conditions at the restaurant which Plaintiff alleges fail to comply with the ADA and/or ADAAG, Plaintiff pleads generally that the "violations that [he] personally observed and/or encountered on his visit, or which have been otherwise verified, are set forth below." (*Id.* at ¶ 21.)

In his response to the motion to dismiss, Plaintiff does not provide clarity as to whether he personally experienced or suffered injury from each of the alleged architectural ADA and/or ADAAG violations. Rather, Plaintiff argues that even if he "did not personally observe each ADA violation at the property," because he has standing with respect to the staff's conduct concerning his service dog, "he [] has standing to address other ADA violations at the property even if he did not personally observe them." (Doc. 8 at 4-5.) As discussed *supra*, the Court concludes that Plaintiff lacks standing to address the alleged staff conduct ADA violation; however, even if the Court concluded that Plaintiff had standing to address the staff conduct portion of his claim, the Court would nevertheless reject Plaintiff's argument for the reasons discussed below.

Assuming Plaintiff did not personally observe each of the alleged architectural ADA violations, that assumption is not necessarily fatal to Plaintiff's claim. In *Steger v. Franco*, several blind plaintiffs sued a building owner for ADA noncompliance. 228 F.3d at 893. Four of the five plaintiffs lacked standing because they had not entered the building at the time the lawsuit was filed, did not have knowledge of the alleged barriers, and did not establish a likelihood to return to the building. *Id.* However, one of the plaintiffs who entered the building but was unable to access the restroom because the signage lacked braille or similar lettering did establish an injury-in-fact with respect to his denial of access to the restroom. *Id.* But, the Eighth Circuit rejected that plaintiff's argument that he had standing to seek relief for all ADA violations within the building

---

[3] This paragraph makes no further mention of specific ADA violations inside the restaurant.

6

(even those unrelated to his blindness) because he was not "'among the injured' with regard to ADA violations in the building that do not affect the blind." *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 563 (1992)).

Therefore, applying *Steger*, Plaintiff may well have standing to challenge even ADA violations that he did not personally encounter, to the extent he was present inside the restaurant.[4] However, that standing includes only ADA violations that presented risks to his disability, and not those unrelated to his disability. *See Steger*, 228 F.3d at 893-94. *Compare Hillesheim v. Holiday Stationstores, Inc.*, 900 F.3d 1007, 1010 (8th Cir. 2018) (Plaintiff's evidence of alleged access-aisle and vertical signage claims only described the alleged violations but did "not explain how the lack of an access aisle or insufficient vertical signage injured him. It made no mention, for example, of whether he had difficulty identifying which spots were handicap accessible or even whether the alleged defects caused him to leave without entering the store."), *with id.* at 1011 (Plaintiff's evidence of garbage-can claim was connected to his decision to leave in that it "stated that he could not safely navigate the ramp without risking injury because the garbage can blocked his path of travel and trying to maneuver around it could have caused his wheelchair to tip over."). *See also Smith v. Bradley Pizza, Inc.*, No. 17-cv-02032, 2019 WL 2448575, at *4 (D. Minn. June 12, 2019) ("A disabled individual does not suffer a cognizable injury merely by observing alleged barriers the individual thinks violate the ADA[]; 'specific evidence' must be identified explaining how the barrier or barriers injured that individual, and that evidence must show something more than that the individual was 'deterred from visiting the store in the future.' . . . Unlike the plaintiff's Article III-worthy garbage-can claim in *Hillesheim*, [the plaintiff here] has drawn no connection here between the violations he observed and his decision to leave." (quoting *Hillesheim*, 900 F.3d

---

[4] Defendants cite to three Eighth Circuit cases which at first glance seem to suggest otherwise; however, those cases are readily distinguishable. In each of those cases, the plaintiff never entered the building, which is a distinction commonly drawn in Eighth Circuit case law. *See Davis*, 886 F.3d at 678 ("The *Steger* case expands standing only when the plaintiff encounters a violation in a building. . . . [The plaintiff] cannot use the violation encountered in the parking space to expand her standing to sue for unencountered violations inside the steakhouse that never injured her."); *Davis v. Morris-Walker, LTD*, 922 F.3d 868, 871-71 (8th Cir. 2019) ("A plaintiff who encounters a violation in one building cannot sue over violations in a neighboring building that she never entered. And [plaintiff], who encountered ADA violations in one parking facility, lacks standing to sue over alleged violations in a separate parking facility that she never visited."); *Dalton v. NPC Int'l, Inc.*, 932 F.3d 693, 695-96 (8th Cir. 2019) ("[The plaintiff] lacks standing to sue over building violations when he never entered it.").

at 1010)), *aff'd*, 821 Fed. Appx. 656 (8th Cir. 2020); *Riggle v. Valero*, No. 8:15CV413, 2016 WL 3149671, at *2 (D. Neb. June 3, 2016) (Plaintiff failed to establish standing where he did not show the alleged ADA violations applied to his stated disabilities, i.e., that the violations "injured him or are somehow causally related to his stated disabilities."). Here, Plaintiff has failed to plausibly allege that the architectural ADA violations presented risks to *his* disability or otherwise injured him, and he therefore lacks standing to challenge those violations.

## Conclusion

After careful consideration and for the reasons explained above, the Court finds that Plaintiff has failed to adequately plead a sufficient injury-in-fact to invoke the Court's Article III subject-matter jurisdiction in this ADA discrimination action. Accordingly, the Court **ORDERS** that (1) Defendants' motion to dismiss is **GRANTED** and (2) Plaintiff's complaint is **DISMISSED without prejudice** for lack of subject-matter jurisdiction.

**IT IS SO ORDERED.**

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: January 3, 2025